OPINION
Defendant-appellant Larry Ray Coy appeals from a summary judgment rendered against him on his petition for post-conviction relief. Coy contends that the trial court erred by dismissing his petition without a hearing. In support, he argues that he presented evidence creating a genuine issue of material fact with regard to his claims.
We conclude that the evidence presented in the record before us is not sufficient to withstand summary judgment, and that the trial court, therefore, did not err in rendering summary judgment. Accordingly, the judgment of the trial court is Affirmed.
 I
In 1993, Larry Ray Coy, was indicted on five counts of forcible rape of a child under the age of thirteen in violation of R.C. 2907.02(A)(1)(b). The charges stemmed from incidents occurring from October thru November, 1992. One count was nolled by the State, and the matter proceeded to trial on the four remaining counts. In 1994, following a jury trial, Coy was convicted of four counts of Rape of a child under the age of thirteen by force or threat of force, all in violation of R.C. 2907.02(A)(1)(b). He was sentenced to life imprisonment on each count with the terms to be served consecutively. This court, upon consideration of the case on appeal, affirmed the conviction and sentences. See, State v. Coy (Mar. 22, 1995), Montgomery App. No. 14415, unreported.
On September 24, 1996, Coy filed a petition for post-conviction relief, pursuant to R.C. 2953.21. The State moved to dismiss upon the ground that the petition was not timely filed. The trial court granted the motion, and Coy appealed the dismissal to this court. We reversed the dismissal and remanded the matter for further proceedings. See, State v. Coy (Dec. 12, 1997), Montgomery App. No. 16395, unreported. Upon remand, the State filed a motion for summary judgment, which was granted by the trial court on June 30, 2000. Coy appeals from the summary judgment rendered against him.
 II
Coy's sole assignment of error is as follows:
 THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT-APPELLANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT A HEARING.
Coy contends that the trial court erred by failing to conduct a hearing on his petition because he presented evidence to demonstrate the existence of a genuine issue of material fact.
Petitions for post-conviction relief are governed by R.C. 2953.21. Subsection (A)(1) of that statute provides, in part, as follows:
 Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed the sentence * * * asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.
Proceedings for post-conviction relief are civil in nature, and are therefore properly the subject of motions for summary judgment. R.C.2953.21(D). The petitioner, who has the burden of demonstrating that a hearing on his petition should be granted, has the initial burden of producing documents sufficient to demonstrate that a genuine issue of material fact exists. State v. Jackson (1980), 64 Ohio St.2d 107, syllabus.
On appeal, our review of the trial court's decision to grant the State's summary judgment motion is de novo. The standard of review in summary judgment cases is well-established. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370.
Coy's petition for post-conviction relief was based upon his claim that he was denied the effective assistance of trial counsel. In the petition, he raised eleven specific allegations of counsel's ineffectiveness, which can be divided into the following categories: (1) failure to investigate and properly present Coy's defense; (2) failure to subpoena records and witnesses regarding the business dealings of the victim's mother; and (3) failure to advise Coy of the consequences of a polygraph examination he agreed to take.
In order to prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient, and that he was prejudiced by that deficient performance to an extent that it deprived him of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687. To demonstrate that his counsel's performance was deficient, a defendant must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. To demonstrate that he was prejudiced by that deficient performance to the extent that he was deprived of a fair trial, the defendant must show that but for his counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id. at 694.
We begin with Coy's claim that he presented evidence warranting a hearing regarding trial counsel's failure to investigate his defense. Coy contends that trial counsel failed to subpoena certain witnesses, and documents, for trial, and that he therefore failed to obtain evidence that would have shown that Coy was in California on March 3, 1993. Apparently, the relevance of this evidence pertains to the fact that the rape victim filed a police report indicating that Coy had accosted her at a school on that day and had threatened her with regard to the rape allegations. Coy's argument in this regard indicates that he believes that evidence showing that he was not in Ohio on that day would have impacted the credibility of the victim at trial.
Specifically, Coy claims that testimony from Gilbert Morgan, Virginia Morgan, and Connie Coy [his wife] would have established that he was in California on March 3, 1993. He also contends that the testimony of his physicians in California as well as his medical bills and medical reports would have shown not only that he was in California on March 9, 1993, but also that his medical condition would have prevented him from traveling to Ohio on March 3, 1993. Next he claims that copies of a Dayton Power 
Light "shut-off" notice, together with his phone bills, hotel bill and California Food Stamps and General Relief documentation, would have corroborated his claim that he was in California on March 3, and that he did not have the funds to travel to Ohio. Finally, Coy claims that testimony from "Detective Zimmerman" would have shown that Coy was not aware of the rape allegations, and therefore had no motive to threaten the victim on that date.
We have reviewed the letters submitted by Connie Coy and Gilbert and Virginia Morgan, which were attached to Coy's petition for relief. All three indicate that they met Coy in Las Vegas on December 12, 1992, and traveled with him to California. They all also indicate that Coy lived in the home of Virginia Morgan from December 13, 1992 until April, 1993. We note that none of these witnesses makes any mention whether Coy traveled to Ohio in March, 1993. Furthermore, none of the three contend that they were aware of Coy's whereabouts on March 3, or that they knew whether he was in Ohio or in California on March 3rd.
We have also reviewed the medical records and bills submitted by Coy. Again, while they may indicate that he was in California on March 9th, they do not purport to note his location on March 3rd. Additionally, Coy did not submit any evidence to indicate that his physicians would have testified that he was in California, or that he could not have traveled to Ohio, on the date in question.
Likewise, Coy did not submit any evidence to corroborate his claim that he was receiving General Relief or Food Stamps in California at that time. Even if he had presented these documents, without evidence that he actually went to a California welfare office on March 3 to receive his benefits, we fail to see how this type of proof would have effectively rebutted the victim's testimony that he was in Ohio on that date.
A review of the Dayton Power Light "shut-off" notice merely indicates that a final bill was sent to Coy at 131 Stainton Avenue, Dayton, and that the final billing date was December 21, 1992. Similarly, the phone bills and hotel bill attached to the petition do not corroborate his claims as to his location on March 3rd.
Finally, Coy fails to produce any evidence to corroborate his claim that Detective Zimmerman would have testified that Coy was unaware of the rape allegations. We question whether this testimony would even be admissible, or that a police officer would have been competent to testify to what Coy was, or was not, aware of.
Given the fact that none of the evidence listed by Coy substantially corroborates, supports or bolsters, his claims regarding his whereabouts on March 3, 1993, we conclude that any failure on the part of trial counsel to have obtained and presented the above-mentioned documents or witnesses at trial does not rise to the level of ineffective assistance of counsel.
Coy also contends that trial counsel failed to properly investigate and present his defense by failing to present documents regarding the victim's mental status. Specifically, he submitted medical records regarding the victim's mental status, which he claims would have impeached her credibility by showing that she had a "propensity to manipulate her mother and [Coy] through tempertantrums [sic] and physical assults [sic]", and that she was "using the charges at bar as retaliation for [Coy's] appropriate discipline of an out-of control child as well as retaliation for [Coy's] role in helping to convict her father."
The medical records submitted by Coy regarding the victim indicate that she presented at an area hospital in November, 1992 for violent behavior, and that she was diagnosed as having a "behavior disorder." However, there is no evidence in the record before us to support Coy's contention that the records indicate that the child invented the claims of rape in order to retaliate against him or that she experienced any further problems or needed any further treatment.
Coy also contends that records regarding the victim's medical status should have been submitted at trial. He claims that the records would demonstrate that the victim's anatomical condition was unchanged from the date of a previous physical examination and the examination conducted after Coy allegedly raped her.[1] Apparently, this argument is centered on the claim that the defense would have argued that the victim had not engaged in any prior sexual activity, and that therefore, the examination results showing no change in her anatomy would have forced the State to inform the jury that the child had been previously raped. Coy believes that this information would have damaged the State's case against him.
First, we note that, apart from his own affidavit, Coy did not submit any evidence to support his claim that the anatomical examination showed no changes between the first rapes committed against the child, and the rapes committed by Coy. Second, we fail to see how evidence that a child's anatomical structure was unchanged between two separate incidents of rape would have damaged the State's case against Coy. There is no evidence to indicate that this lack of change is medically significant, and therefore there is no indication that it is even probative of the issue whether Coy committed rape. In fact, counsel may well have determined that evidence that this young child had been previously raped would have swayed the jury to feel so much sympathy toward her that Coy could not have received a fair trial.
Since we conclude that Coy's claims regarding the victim's mental status are not supported by the evidence submitted with his petition and that the evidence regarding her anatomical examination is not admissible, and of doubtful probative value, we find that counsel's failure to offer this evidence was not deficient or prejudicial.
We next address Coy's claim that counsel was ineffective because he failed to present evidence regarding the business dealings of the victim's mother. Coy argues that the victim's mother not only would have testified as to his good character, but she would also have presented testimony indicating that she had committed fraud by attempting to secure, for her own use, payment of a bill owed to a business owned by Coy. It appears that Coy believes that the mother instigated the rape charges because he had thwarted her attempt to secure, for her own use, the monies owed to his business. He also appears to argue that the mother would have impeached the credibility of the victim.
Coy attempts to pronounce counsel ineffective for failing to call a witness who would have impeached herself by implicating herself criminally and impeached her own daughter by showing that the charges were filed because the mother was retaliating against Coy for keeping her from gaining access to his money; all while testifying to Coy's good character. Immediately, we can see how counsel, as a matter of sound trial strategy, would have wanted to avoid offering such a contradictory witness. More importantly, Coy failed to present any evidence to corroborate his claims regarding the mother's actions, and therefore failed to provide any support for his claim that she falsely instigated the rape charges.
Finally, we address Coy's claim that trial counsel was ineffective with regard to the admission, at trial, of a polygraph examination. Coy contends that counsel erred by failing to challenge the results of the test prior to trial. In support, he presented the affidavit of a polygraph expert who averred that the test conducted on Coy was not performed in a professional manner.[2] He also contends that counsel failed to advise him of the consequences of submitting, or stipulating, to a polygraph examination, or of his right to call an independent expert at trial.
We begin by noting that the issue of the failure of counsel to object to the polygraph was raised in Coy's direct appeal, wherein we held that counsel had no grounds to object to the admission of the polygraph. See, State v. Coy (Mar. 22, 1995), Montgomery App. No. 14415, unreported, at 3. Since the failure to challenge the test was previously raised, and is also apparent from the record, this claim is barred by the doctrine of res judicata.
We next note that while Coy claims that his attorney did not discuss the ramifications of the polygraph examination with him, he does not contend, or argue, that he would not have submitted to the polygraph exam had he better understood the possible consequences. Instead, all of his arguments regarding the polygraph appear to focus on the failure to contest the results.
This court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, supra, at 689. This Court has stated that under Ohio law, a properly licensed attorney is presumed competent. State v. Estes (Mar. 1, 1996), Montgomery County App. No. 15311, following Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301. Further, we have held that "counsel's performance will not be deemed ineffective unless and until" the defendant has met the requirements of Strickland. Estes, supra.
We find that Coy's petition fails to meet the standard set forth in Strickland, so that the trial court did not err by dismissing his petition for relief without conducting a hearing. Accordingly, Coy's sole assignment of error is overruled.
 III
Coy's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 ____________________ FAIN, J.
BROGAN and YOUNG, JJ., concur.
[1] According to the record, the previous examination was conducted following a prior rape incident involving the child victim and a different man.
[2] We note that this expert admitted that he did not examine either the polygraph charts or the examiner's report when formulating his opinion.